| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> State of Texas | **DEFENDANTS** <br> 23andMe Holding, Co., 23andMe, Inc., Lemonaid Health, Inc., 23andMe Pharmacy Holdings, Inc., LPharm RX LLC, LPharm INS LLC, LPharm CS LLC, Lemonaid Community Pharmacy, Inc., LPRXOne LLC, LPRXTwo LLC, LPRXThree LLC, and Lemonaid Pharmacy Holdings Inc. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Layla D. Milligan, Roma N. Desai <br> P. O. Box 12548, Austin, Texas 78711-2548 <br> P: (512) 463-2173/F: (512) 936-1409 | **ATTORNEYS** (If Known) <br> Paul, Weiss, Rifkind, Wharton & Garrison LLP 1285 Avenue of the Americas New York, NY 10019 Phone: 212.373.3000 Fax: 212.757.3990; Carmody MacDonald P.C. 120 S. Central Ave. Suite 1800 St. Louis, MO 63105 Phone: 314.854.8600 Fax: 314.854.8660 |
| **PARTY** (Check One Box Only) <br> ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor  ☒ Other <br> ☐ Trustee | **PARTY** (Check One Box Only) <br> ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor  ☐ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint seeking Declaratory Judgment regarding the validity and extent of the Debtors' interest in Texas customers' genetic material and related data pursuant to FRBP 7001(2) & (9), 11 U.S.C. 363, 541, 28 U.S.C. 959(b) and 2201.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

(L.F. 18 Rev. 06/08)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>In re 23andMe Holding Co., et al. | BANKRUPTCY CASE NO.<br>25-40976 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Missouri | DIVISION OFFICE<br>Eastern Division | NAME OF JUDGE<br>Hon. Brian C. Walsh |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ L. Milligan* | | |
| DATE<br>June 9, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Layla D. Milligan | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| 23ANDMEHOLDING CO., *et al.*,[1] | § | Case No. 25-40976 |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |
| STATE OF TEXAS; | § | |
| | § | Hon. Brian C. Walsh |
| | § | U.S. Bankruptcy Judge |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| 23ANDME HOLDING, CO., 23ANDME, INC., | § | **Adversary No.** _____ |
| LEMONAID HEALTH, INC., 23ANDME | § | |
| PHARMACY HOLDINGS, INC., LPHARM | § | |
| RX LLC, LPHARM INS LLC, LPHARM CS | § | |
| LLC, LEMONAID COMMUNITY | § | |
| PHARMACY, INC., LPRXONE LLC, | § | |
| LPRXTWO LLC, LPRXTHREE LLC, and | § | |
| LEMONAID PHARMACY HOLDINGS INC. | § | |
| | § | |
| Defendants. | § | |

## THE STATE OF TEXAS'S COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE BRIAN C. WALSH, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW the State of Texas ("Texas"), by and through the Office of the Texas Attorney General, and as set forth in more detail below, respectfully files this Complaint for Declaratory Relief (the "Complaint") seeking this Court's determination that Texas residents have an exclusive property right in, and right to exercise exclusive control over, (1) their biological sample and (2) genetic data (i.e., the results of genetic testing or analysis conducted on their DNA).[2] Further, Texas seeks this Court's determination that Debtors and any purchaser must

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.
[2] Tex. Bus. & Com. Code § 503A.003.

---

**STATE OF TEXAS COMPLAINT**   **PAGE 1**

comply with Texas law related to the sale, transfer, or disclosure of any such biological samples and genetic data pursuant to the Texas Direct-to-Consumer Genetic Testing Act,[3] and, along with any other sensitive personally identifiable information and data of Texas residents, the Texas Data Privacy and Security Act,[4] and the Texas Identify Theft Enforcement and Protection Act.[5]  In support of its Complaint, Texas respectfully states as follows:

### I.     JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1), (b)(2)(A) and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7008, Texas consents to the entry of a final order by the Court in connection with this adversary proceeding.

### II.     BASIS FOR RELIEF

4. Texas has commenced this adversary proceeding pursuant to FRBP 7001(2), (7), and (9), seeking declaratory judgment under 28 U.S.C. §§ 959(b) and 2201 regarding the validity and extent of the Debtors' interest in Texas customers' genetic material and related data as well as other sensitive personally identifiable information, including whether the Debtors have the right to sell, transfer, or disclose the genetic material and data, and other sensitive personally identifiable information, to any buyer without first obtaining informed and affirmative separate express consent from each Texas customer pursuant to Texas law.

---

[3] Codified primarily in Texas Business & Commerce Code § 503A.001 *et seq*.
[4] Codified primarily in Texas Business & Commerce Code § 541.001 *et seq*.
[5] Codified primarily in Texas Business & Commerce Code § 521.001 *et seq*.

### III.  PARTIES

5.    The Plaintiff is the State of Texas, acting pursuant to statutory authority to enforce Texas's data privacy and consumer protection laws on behalf of its citizens.[6]

6.    The Defendants are 23andMe Holding, Co., 23andMe, Inc., Lemonaid Health, Inc., 23andMe Pharmacy Holdings, Inc., LPharm RX LLC, LPharm INS LLC, LPharm CS LLC, Lemonaid Community Pharmacy, Inc., LPRXOne LLC, LPRXTwo LLC, LPRXThree LLC, and Lemonaid Pharmacy Holdings Inc. (together "Debtors," "Defendants" or "23andMe"). Defendants are the Debtors in Possession in the above-captioned bankruptcy case, and are in possession of and are seeking to sell, transfer, or disclose the genetic material and related data, including other sensitive personally identifiable information, of Texas citizens to third parties in the underlying bankruptcy case.[7]

### IV.  BACKGROUND

*A. General Facts*

7.    Founded in 2006, 23andMe provides genetic testing directly to consumers, which includes collection of a consumer's biological sample, conducting DNA genotyping, and providing "personalized genetic reports on everything from ancestry composition to traits to genetic health risks."[8]  23andMe also provides Exome Sequencing to "detect 50,000+ hereditary disease-causing variants."[9]  As a result of its products and services, according to the Debtors, the company has amassed data from over fifteen (15) million customers.[10]

8.    In October 2023, 23andMe suffered a data breach which, they believe, impacted

---

[6] *See* Tex. Bus. & Com Code §§ 503A.008, 541.151, 521.151-.152, 17.46, and 17.47.
[7] All references herein to the "docket," "Dkt. No." or "pleadings filed" relate to documents filed in the underlying bankruptcy case, case no. 25-40976.
[8] *See* Dkt. No. 32, First Day Declaration, ¶¶ 19, 27; 23andMe, Frequently asked questions, https://www.23andme.com (last visited April 2, 2025).
[9] *See* 23andMe, Frequently asked questions.
[10] *See* Dkt. No. 32, First Day Declaration, ¶ 19.

---

**STATE OF TEXAS COMPLAINT**                                                                                            **PAGE 3**

approximately seven (7) million consumers, thus prompting various federal, state, and international investigations, including an investigation by Texas into the company's state law violations.[11]

9. On March 23, 2025, 23andMe Holding Co., along with eleven (11) affiliated debtors, filed a voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code, case no. 25-40976, pending before the U.S. Bankruptcy Court, Eastern Division of Missouri.

10. Since the filing of the underlying bankruptcy case, Debtors have repeatedly assured Texas consumers, along with consumers across the United States, that the data in Debtors' possession can be and would be deleted upon request of the consumers. Despite these assurances, Texas has received complaints regarding the inability of consumers to delete their data, and, to date, Texas has been unable to confirm that information has been deleted.

11. On March 28, 2025, an Order (I) Approving Bidding Procedures for the Sale of the Debtors Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry Into Stalking Horse Agreement(s), if any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimus Assets, and (VII) Granting Related Relief[12] was entered by the Court.

12. A Notice of Successful and Backup Bidders with Respect to the Auction of Debtors' Assets was filed on May 19, 2025, indicating bids by two third parties.[13]

13. A hearing to approve the sale of the Debtors' assets, including genetic data,

---

[11] *See* Dkt. No. 32, First Day Declaration, ¶¶ 6, 64.
[12] Dkt. No. 125.
[13] Dkt. No. 420.

---

**STATE OF TEXAS COMPLAINT** PAGE 4

material, information, and personally identifiable information, is scheduled to take place on June 17, 2025, at 9:00 a.m. (CST).

### B. The Personal Data Subject to Sale

14. 23andMe collects and maintains a significant amount of sensitive personal information about Texas consumers, including, but not limited to:

   a. "**Profile Data**" from consumers, including their name, date of birth, birth sex, current gender, relationship labels (whether they identify themselves as male or female), and contact information.[14]

   b. "**Family Tree Data,**" obtained by asking users to input information about their relatives, who may or may not be 23andMe users.[15]

   c. "**Phenotype Data**" – each individual customer's personal data and health information as collected through initial and supplemental surveys, research participation, and uploaded medical records.[16] Phenotype data represents the observable characteristics of an individual – the physical expression of that individual's genes (their genotype).

15. Importantly, 23andMe collects and analyzes biological samples from consumers and sequences their genome for the consumer, creating "Genetic Data."[17] This data, consisting of a human's raw genetic code, is then kept as a .csv file linked to the user's profile. 23andMe has collected Genetic Data from more than 15 million people.[18] 23andMe analyzes this raw genetic information to provide insights about an individual's ancestry, including the likely regions of

---

[14] *See* https://customercare.23andme.com/hc/en-us/articles/360004944654-What-s-In-Your-Account-Settings
[15] *See* https://customercare.23andme.com/hc/en-us/articles/360036068393-The-23andMe-Family-Tree-Feature
[16] *See* https://customercare.23andme.com/hc/en-us/articles/212873367-Updating-Your-Personal-Information-with-23andMe-Name-Sex-Date-of-Birth
[17] Dkt. No. 32 at paras. 26-32.
[18] Dkt. No. 32 at paras. 2-3, 19.

---

**STATE OF TEXAS COMPLAINT**                                                                    **PAGE 5**

origin of their forebears.[19] 23andMe also analyzes their customers' genomes to determine the presence of genetic risk factors for diseases.

16. 23andMe holds—and is proposing to sell to a third-party—an unprecedented compilation of highly sensitive and immutable personal data: a human being's immutable genetic identity (their genome). Each individual's information is conjoined with their phenotype data (how their genome has manifested itself physically/mentally) and other sensitive personal information, including the individual's family tree and contact information.

17. Virtually all of this personal information is immutable. If stolen or misused, it cannot be changed or replaced. Furthermore, this data is exclusively personal and unique, representing that customer's identity and not the identity of any other human being.

18. In addition, this exclusively personal data also carries with it significant, sensitive information about others who share DNA and/or familial relationships. For example, this data can be used to identify and track those who are related to the 23andMe consumer—including deceased ancestors and future generations yet unborn. In other words, the magnitude of the data in this proposed sale stretches far beyond the 23andMe consumers, impacting those who have no awareness of the sale as well as humans who no longer exist and do not exist yet.

C. *Applicable Bankruptcy Laws*

19. Under applicable bankruptcy law, it is a "fundamental bankruptcy principle that the estate succeeds to whatever property the debtor possessed outside of bankruptcy[,]"[20] and while federal bankruptcy law defines what is property of the bankruptcy estate, it is state law that defines the extent of the estate's interest in the property.[21]

---

[19] Dkt. No. 32 at para. 26, 28. 31.
[20] *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 193 B.R. 722, 729 (D.N.J. 1996), *aff'd*, 124 F.3d 487 (3d Cir. 1997).
[21] *See Stellwagen v. Clum*, 245 U.S. 605, 613 (1918); *Butner v. United States*, 440 U.S. 48, 54 (1979).

---

20. Property of the estate is defined as the debtor's legal or equitable interest in property at the commencement of the estate. "To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate."[22]

21. Section 541(c)(1) of Title 11 does not change this fundamental principle. Section 541(c)(1) "governs what is property of the estate; it does not address what a [debtor] is allowed to do with that property."[23] In other words, any limitations on transfer of property prepetition remain intact once the bankruptcy is filed.

22. Likewise, as recognized by the Eighth Circuit, 11 U.S.C. § 363 does not expand 23andMe's interest in property. Section 363(b)(1) is an enabling statute that gives debtors "the authority to sell or dispose of property if the debtors would have had the same right under state law."[24] Section 363(f)(1) only allows the sale of property if nonbankruptcy law would permit the sale.[25]

23. Finally, 28 U.S.C. § 959(b) requires that debtors operate in accordance with state law, including the statutory and common law rights of consumers.

D. *Applicable Texas Laws*

   a. *Texas Direct-to-Consumer Genetic Testing Act*

24. As a company offering genetic testing products or services directly to consumers in the State of Texas, 23andMe and any buyer(s) of the company's genetic testing line, genetic data, and/or biological samples (the "Sale Parties") are required to comply with the Texas Direct-to-Consumer Genetic Testing Act (the "DTC Genetic Testing Act").[26] The Texas Legislature

---

[22] *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) (citing *In re Balay*, 113 B.R. 429, 445 (Bankr. N.D. Ill. 1990) (quoting 4 Collier on Bankruptcy P 541.06 (15th ed. 1989)).
[23] *In re Paul*, 355 B.R. 64, 67 (Bankr. N.D. IL 2001); *see In re Crossman*, 259 B.R. 301 (Bankr. N.D. Ill. 2001).
[24] *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987); *see In re Paul*, 355 B.R. 64, 68 (Bankr. N.D. Ill. 2001).
[25] 11 U.S.C. § 363(f).
[26] Codified primarily in Texas Business & Commerce Code § 503A.001 *et seq*.

---

**STATE OF TEXAS COMPLAINT**                                                                                           **PAGE 7**

passed the DTC Genetic Testing Act to provide Texans with genetic data privacy protections because "private genetic testing companies such as Ancestry and 23andMe fall in a regulatory gray area."[27] This law "reaffirm[s] that [Texans] are [to] always [be] informed and have complete control of when and how their genetic data will be shared . . . ."[28]

25. Under the DTC Genetic Testing Act, individual Texas residents have an exclusive property right in, and right to exercise exclusive control over (1) their biological sample and (2) genetic data (i.e., the results of genetic testing or analysis conducted on their DNA), "including the collection, use, retention, maintenance, disclosure, or destruction of the sample or results."[29] The Sale Parties must "provide a process for an individual to access their genetic data, delete their account and/or genetic data, and destroy or require the destruction of their biological sample," and "develop, implement, and maintain a comprehensive security program to protect an individual's genetic data against unauthorized access, use, or disclosure."[30] Other requirements include providing public notice of basic information about the company's collection, use, or disclosure of genetic data.[31] The Sale Parties are also prohibited from disclosing an individual's genetic data to an entity that offers health insurance, life insurance, or long-term care insurance or an individual's employer absent written consent.[32]

---

[27] S. Comm. on Bus & Com., Bill Analysis, Tex. H.B. 2545, 88th Leg., R.S. (2023).
[28] *Id*.
[29] *See id.* §§ 503A.003 ("Biological sample means a material part of the human body, or a discharge or derivative part of the body, including tissue, blood, urine, or saliva that is known to contain DNA." *Id*.§ 503A.001(1). "Genetic data means any data, regardless of format, concerning an individual's genetic characteristics. The term includes: (i) raw sequence data derived from sequencing all or a portion of an individual's extracted DNA; (ii) genotypic and phenotypic information obtained from analyzing an individual's raw sequence data; and (iii) health information regarding the health conditions that an individual self-reports to a company and that the company (a) uses for scientific research or product development; (b) analyzes in connection with the individual's raw sequence data; and (c) does not include deidentified data." *Id*. § 503A.001(6). "Deidentified data means data not reasonably linked to and that cannot reasonably be used to infer information about an identifiable individual." *Id*. § 503A.001(2). "DNA means deoxyribonucleic acid." *Id*. § 503A.001(4).
[30] *Id*. § 503A.005(a)(1), (c).
[31] *Id*. § 503A.005(a)(2), (b).
[32] *Id*. § 503A.007(b).

---

26. The DTC Genetic Testing Act also requires that 23andMe obtain an individual's **separate express consent** to: (a) transfer or disclose the individual's genetic data to any person other than the company's vendors and service providers; (b) use genetic data for a purpose other than the primary purpose of the company's genetic testing product or service; or (c) retain the biological sample following completion of the initial testing service.[33] Specifically, 23andMe must obtain a **separate** "affirmative response to a clear and meaningful notice regarding the collection, use, or disclosure of genetic data for a specific purpose."[34]

27. The consumer's click-through acceptance of 23andMe's Terms of Service and Privacy Statement upon signing up for services does not meet the separate express consent requirement as defined by the DTC Genetic Testing Act. 23andMe may not transfer or disclose Texans' genetic data and biological samples or deprive Texans of their property rights and rights to exercise exclusive control without their separate express consent.

    b. *Texas Data Privacy and Security Act.*

28. 23andMe and the Sale Parties are also subject to the Texas Data Privacy and Security Act (the "TDPSA"), which regulates the collection, use, processing, and treatment of consumers' personal data and provides consumers with certain rights regarding their data.[35] Companies subject to the TDPSA are required to establish, implement, and maintain reasonable administrative, technical, and physical data security practices to protect the confidentiality, integrity, and accessibility of personal data.[36] Personal data includes sensitive data such as genetic data, personal data revealing racial or ethnic origin, mental or physical health diagnosis, and

---

[33] *Id*. § 503A.006(a)(1).
[34] *Id*. § 503A.001(5) (defining "express consent").
[35] Codified primarily in Texas Business & Commerce Code § 541.001 *et seq.*
[36] *Id*. § 541.101(a)(2).

---

STATE OF TEXAS COMPLAINT     PAGE 9

personal data collected from a known child.[37]

29. Subject companies may not process the sensitive data of a consumer without obtaining the consumer's consent.[38] "Process" or "Processing" includes the disclosure of sensitive data such as a Texan's genetic data and health diagnosis.[39] Consent under the TDPSA "means a clear affirmative act signifying a consumer's freely given, specific, informed, and unambiguous agreement to process personal data relating to the consumer."[40] A consumer's consent is <u>not</u> obtained through the "acceptance of a general or broad terms of use or similar document that contains descriptions of personal data processing along with other, unrelated information; hovering over, muting, pausing, or closing a given piece of content; or agreement obtained through the use of dark patterns."[41]

30. The click-through acceptance of 23andMe's Terms of Service and Privacy Statement does not meet the consent requirement as defined under the TDPSA. 23andMe does not have the requisite consent of Texans to disclose their sensitive data, including genetic data and medical information, to a third-party buyer. 23andMe must obtain informed consent from the Texas consumers before disclosing their sensitive data to a third-party buyer under the proposed bankruptcy sale.

    c. *Texas Identity Theft Enforcement and Protection Act*

31. 23andMe and the Sale Parties are also subject to the Texas Identity Theft Enforcement and Protection Act ("<u>ITEPA</u>").[42] ITEPA creates legal protections for certain information and data breach notification and reporting requirements.

---

[37] *Id.* § 541.001(19), (29).
[38] *Id.* § 541.101(b)(4).
[39] *Id.* § 541.001(22) (defining "process" to include disclosure) and *id.* § 541.001(29) (defining "sensitive data").
[40] *Id.* § 541.001(6).
[41] *Id.*
[42] Codified primarily in Texas Business & Commerce Code § 521.001 *et seq.*

---

**STATE OF TEXAS COMPLAINT**      **PAGE 10**

32. Companies that collect or maintain "Sensitive Personal Information" have a business duty to implement and maintain reasonable safeguards to protect it from unlawful use or disclosure.[43] The genetic data and health information the Debtors possess is Sensitive Personal Information, and ITEPA requires the Debtors and any purchaser to comply with the business duty to protect this data.[44]

33. In the event of a data breach, ITEPA requires companies to timely notify affected consumers and, if involving 250 or more Texas residents, to report the breach to the Office of the Texas Attorney General.[45] 23andMe and any potential purchaser must also comply with these requirements and have in place an appropriate Data Breach Response and Notification Plan in the event of the unlawful disclosure of the genetic data such as the data breach the Debtors' encountered in October 2023.

34. Any sell, transfer, or disclosure of Sensitive Personal Information in this bankruptcy case must have reasonable technical, physical, and administrative safeguards to protect it from unlawful use or disclosure.

35. As indicated herein, Texas law grants Texas citizens a property interest in their genetic data and material.[46] Texas law places specific limitations and restrictions on the Debtors' right to sell, transfer, or disclose its customer's sensitive personal and genetic data, including requirements regarding the consumer's informed and separate express consent. These laws apply to property of the bankruptcy estate, specifically property subject to sale in the pending underlying bankruptcy case.

36. Accordingly, Texas brings this Complaint seeking a declaratory judgment to

---

[43] *Id.* § 521.052(a).
[44] *See id.* § 521.002(a)(2)(B)(i) (defining "Sensitive Personal Information").
[45] *Id.* § 521.053.
[46] *Id.* § 503A.003.

---

determine whether and to what extent 23andMe has the right to sell, transfer, and disclose genetic and sensitive personally identifiable information in its possession to a third party purchaser without first obtaining the informed and separate express consent of the owners of that property—its Texas customers.

## V.     COUNT I (Declaratory Judgment):

37. Texas incorporates by reference all preceding paragraphs, as if specifically asserted herein.

38. Texas requests that, pursuant to FRBP 7001(2) & (9) and 28 U.S.C. §§ 959(b) and 2201, the Court determine the validity and extent of 23andMe's interest in each Texas consumers' genetic material and related data, as well as sensitive personally identifiable information, including by determining and declaring judgment as follows:

   A.  Texas consumers have an inherent property right of ownership and control in (a) their biological sample (i.e., tissue, blood, urine, or saliva that is known to contain DNA) and (b) their Genetic Data (i.e., the results of genetic testing or analysis conducted on the individual's DNA), including the collection, use, retention, maintenance, disclosure, or destruction of the sample or results;

   B.  23andMe lacks sufficient ownership interest in and right to control and sell, transfer, or disclose a Texas consumer's biological sample and their Genetic Data to a third party <u>absent the consumer's informed and affirmative separate express consent to the proposed sale, transfer, or disclosure</u> based on consumer's inherent right of ownership and control in their biological material and Genetic Data;

C.  23andMe is required to obtain a Texas consumer's informed consent to process or disclose sensitive data as defined by the TDPSA;

D.  A Texas consumer's general acceptance of 23andMe's Terms of Service and Privacy Statement does not meet the standard of <u>separate express consent</u> under the DTC Genetic Testing Act that defines such consent as a separate "affirmative response to a clear and meaningful notice regarding the collection, use, or disclosure of genetic data for a specific purpose;"[47]

E.  A Texas consumer's general acceptance of 23andMe's Terms of Service and Privacy Statement does not meet the TDPSA's <u>consent</u> standard which excludes "acceptance of a general or broad terms of use or similar document that contains descriptions of personal data processing along with other, unrelated information" from the definition of consent under the TDPSA;[48]

F.  23andMe shall not sell, transfer, or disclose genetic data, biological samples, or sensitive data without first obtaining the informed and affirmative separate express consent from Texas consumers.

G.  23andMe has no property interest, and cannot sell, transfer, or disclose, any genetic data or sensitive personally identifiable information or data that Texas consumers have requested to be deleted.

H.  23andMe has no property interest, and cannot sell, transfer, or disclose any biological samples or materials that Texas consumers have requested to be destroyed.

---

[47] *Id*. § 503A.001(5).
[48] *Id*. § 541.001(6)(A).

___

STATE OF TEXAS COMPLAINT                                                                                      PAGE 13

## VI.  RESERVATION OF RIGHTS

Texas reserves the right to assert any alternative causes of action, to amend this Complaint, and to pursue any additional claims.

## VII.  PRAYER

WHEREFORE, Texas respectfully requests that the Court (a) enter a declaratory judgment as to the issues set forth in Count I above prior to any sale; (b) and enter any further relief to which the Court finds is just.

*[Remainder of page left intentionally blank.  Signature page follows.]*

Dated: June 9, 2025,

Respectfully Submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**RACHEL R. OBALDO**
Chief for Bankruptcy & Collections Division

*/s/ Layla D. Milligan*
LAYLA D. MILLIGAN
Texas State Bar No. 24026015
ROMA N. DESAI
Texas Bar No. 24095553
STEPHANIE EBERHARDT
Texas Bar No. 24084728
Assistant Attorneys General
Office of the Texas Attorney General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 463-2173/F: (512) 936-1409
layla.milligan@oag.texas.gov
roma.desai@oag.texas.gov
stephanie.eberhardt@oag.texas.gov

**ATTORNEYS FOR THE STATE OF TEXAS**